Judgment appealed from reversed and a new trial granted, with costs to abide the event.

---

BRIDGET McDONALD, as ADMINISTRATRIX OF THOMAS McDONALD, DECEASED, RESPONDENT, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Negligence — a defective head-light on an engine — an engineer, neglecting to have his engine repaired, is a fellow-servant of a flagman.*

In an action brought to recover damages resulting from the negligence of a railroad corporation alleged to have caused the death of a flagman, it appeared that when an engine started from Syracuse upon the defendant's railroad it had been lately examined and was in good order; that upon its arrival at Rochester the engineer discovered that the head-light glass had tilted back so that air could get in, which

had blown out the light; that he did not have it repaired, and did not relight it, but put on the front of the engine a signal light about the size of an ordinary track lantern and proceeded, and that in the night he struck and killed a flagman.

It was also shown that the rules of the corporation required engineers to look at their engines, and if not in repair to take the engine to the repair shop at once; that a head-light be shown after sunset, and that every precaution must be taken for safety. It also appeared that there was a repair shop at Rochester.

*Held,* that it was the duty of the engineer to have run his engine into the shop for repairs.

That, in the performance of their several duties, the engineer and the flagman were fellow-servants .

That the act of the engineer in determining to proceed with a defective engine was not the act of the corporation, but that of a co-employee of the flagman.

That as the examiner at Syracuse had fully performed his duty and declared the engine fit to proceed, after inspection had, the defendant was not liable, the inspection required by the engineer being that of a servant simply.

APPEAL by the defendant, the New York Central and Hudson River Railroad Company, from an order of the Supreme Court, entered in the office of the clerk of Monroe county on the 1st day of December, 1891, denying its motion for a new trial upon the minutes of the court, the plaintiff having recovered a verdict of $4,250 after a trial at the Monroe Circuit before the court and a jury.

The action was brought to recover the damages resulting from the death of the plaintiff's intestate, Thomas McDonald, who was killed while in the discharge of his duties as a flagman in the defendant's employ, at the first highway crossing west of Chili station, on the evening of December 9, 1891, by coming in collision with an engine of defendant's running westerly, without a train, in the night-time, without a lighted head-light.

*Albert H. Harris,* for the appellant.

*George F. Yeoman,* for the respondent.

LEWIS, J. :

We assume, in disposing of this appeal, that McDonald's death was caused by the running of the engine without a head-light, and that he was free from negligence contributory to his death. The question to be considered is, whether the deceased came to his death by the negligence of the defendant or by the negligence of a co-employee only.

Mr. Brown, as one of defendant's engineers, was required on the afternoon of the day of the accident to run an engine from the round-house in the city of Syracuse to the city of Buffalo; his fire-man was Thomas Freeney. They left Syracuse at 2.30 that after-noon; when they arrived at Rochester it was dark, and they there discovered that the head-light glass of the engine was out of order and the light was not burning. The glass was unbroken; the bottom of it was in position, but the top was tilted back four inches, which let in the air and extinguished the head-light. The engineer could not repair it, so he caused to be placed on the front of the engine a signal light about the size of an ordinary track lantern, and pro-ceeded westwardly towards Buffalo without any head-light except the lantern; and in passing over the crossing where McDonald was stationed ran against him, causing his death.

It was shown upon the trial that the defendant had in its employ at the round-house in Syracuse, where this engine was kept, a Mr. Wilke, whose business it was, and had been for many years, to inspect the head-lights of the engines and see that they were kept in repair. This engine was shown to have been in the round-house at Syracuse the day of the accident until it was taken by the defend-ant's engineer, as stated.

The evidence tended to show that the head-light was inspected by defendant's inspector before it left Syracuse that day, and that it was in good condition. The defendant had shops at Syracuse and Rochester, with facilities for repairing the head-lights of their engines. There was evidence tending to show that the defendant required its engineers, when using engines, to look at them to see that they were in proper order for use; and in case they were found to be out of order, to take the engine at once to the proper place for repairs, and report the defects. The rules of the company provided that a train running after sunset should display its head-light. The rules also provided that conductors and enginemen must take every precaution for the protection of their train, and in all cases of doubt or uncertainty to take the safe course and run no risks.

The trial justice charged the jury that it appeared from all the evidence in the case that the engineer was charged with the duty of inspecting the engine and seeing that it was in proper condition, and that it was for them to say whether the failure of the inspector,

who, for the purposes of taking care of the engine, stood in the place of the company itself, whether his failure, after he had discovered that there was a defect in the head-light, to bring it to the notice of the people whose duty it was to mend it, and to see that the proper thing should be done with it, was negligence on the part of the company. The defendant's counsel duly excepted to this portion of the charge of the court, and asked the court to charge the jury that, in leaving Rochester and running to the crossing in question with the head-light of the engine out of order, the engineer acted as a fellow-servant of McDonald, and not as the defendant. The court declined so to charge, and the defendant excepted. The court did charge that there was no negligence in the inspection of the head-light at Syracuse, and that there was no evidence of any defect in the head-light when it left Syracuse. So we have the question presented, was the act of the engineer in proceeding with the defective head-light the negligence of the defendant, or the negligence of a co-employee of the deceased ?

It is obviously the duty of every person engaged in the use of any kind of machinery to keep a constant supervision over it to see that it does not get out of order. The evidence shows that the repairing of this head-light could only be done at a shop furnished with proper facilities. It was the engineer's duty, when he found the head-light out of order, to run the engine into the shop at Rochester for repairs. The engineer, the fireman and the deceased, so far as the ordinary duties they were required to perform, were unquestionably fellow-servants.

It is conceded that when Brown was performing an act necessary to the management and movement of his engine he was a co-employee of the deceased. But it is contended that when he was looking at the engine to see if it was in condition to be safely used, he was an inspector and stood in the place of the company.

The acts of manipulating the engine levers and looking at the engine may be performed simultaneously, and yet the respondent contends that when doing one of the acts Brown stood as a representative of the company, and in doing the other he was acting as an engineer, simply. In keeping an oversight over the engine, the engineer was, we think, simply performing a duty incumbent upon him as an engineer, a duty incident to his position as an engineer ;

and when he determined to proceed with the defective engine it was the act of a co-employee of the deceased, and not the act of the principal.

The engineer was not required to repair the head-light. Had he run the engine into the repair shop and reported its condition to the company, he would have fully discharged his duty. If an employer, who carefully examines a machine, and finding it in good condition directs his servants to use it, enjoining upon one of them the duty of watchfulness to see that it does not get out of repair, is to be held liable for an injury to one of the servants caused by the failure of the one required to keep watch to perform his duty in that regard, the doctrine that employers are not to be held liable for the negligent acts of co-employees would be practically exploded.

"A rule of a railroad company providing that conductors will be held responsible for the proper adjustment of switches used by their trains does not make the conductor the representative of the company so as to make his negligence that of the company in respect to injuries sustained by other employees." (*Miller* v. *Southern Pacific R. Co.*, Oregon, vol. 43 Alb. L. Jour., 354; *Reynolds* v. *Kneeland*, 17 N. Y. Supp., 895.)

We have examined the authorities referred to by the learned trial justice, and the counsel for the respondent, but they fail in our judgment to sustain the verdict in this case. *Fuller* v. *Jewett* (80 N. Y., 46) was a case of an injury to an engineer, caused by the explosion of a locomotive boiler. The explosion was caused by the weakness of the boiler, resulting from defective stay-bolts and a defective outer sheeting. The engine, after it had been in use for ten years, was taken to the shop of the company for general repairs, and the master mechanic in charge of the shop gave directions for its thorough overhauling. The repairs were made by mechanics in the employ of the company. The company was held liable for the negligence of these mechanics in repairing the boiler, upon the ground that it had delegated to them the entire charge of making the repairs, and in doing so they stood in the place of the principal. The case of *Crispin* v. *Babbitt* (81 N. Y., 516) fails to sustain the contention of the respondent.

The defendant having in its employ at Syracuse an expert to whom it had confided the duty of examining and repairing its locomo-

tive head-lights, and he having fully discharged his duty in the premises, the defendant was not liable to the plaintiff for the negligence of the engineer. The supervision of the engine required of the engineer Brown pertained to his duty as an operative simply, and in performing it he was acting as a co-employee of the deceased.

We find ourselves unable to agree with the learned trial court's views of the liability of the defendant upon the evidence.

The order appealed from should be reversed, and a new trial granted, costs to abide the event.

DWIGHT, P. J., and MACOMBER, J., concurred.

Order denying motion for a new trial appealed from reversed, and a new trial granted, with costs to abide the event.