clearly shown.   The plaintiff urges that this was not a safe place to work.   If there was any other danger than from stones falling from the top of the bank, plaintiff's intestate was not injured by it. While the stones were being unloaded directly over the place where plaintiff's intestate was working, he and Luke, another wall layer, working four feet from him, stopped work, and stepped down, and out of the way of danger.   When the unloading was completed, they resumed their work.   Luke testifies that before resuming work he looked up the bank, and saw no stone near the edge.   We have the fact that the bank was sustained by the four feet of the old wall; that there was no person upon the bank near the stone when it fell; that no one observed it before it fell.   How much the earth on the bank rose above the top of the wall, is not shown; but we infer it did to some extent, since, when the stone slipped, it left its trail in the earth as if it had been pushed or rolled off.   It probably could be inferred from all the evidence that the towpath was somewhat higher than the retaining wall, and that the stone was placed so near its edge that the earth upon which it rested gradually yielded beneath it, and thus it fell.   If so, the negligence, if any, was that of a fellow servant.   There was evidence to the effect that the foreman of the defendants told the teamster to unload the stones as near to the edge of the bank as he could without having them roll over into the canal.   We do not think negligence or willfulness can be imputed to the defendants because of such a direction.   From the nature of the work, any intelligent teamster should infer as much without direction.   It does not appear that there had been any indications that the edge of the bank was soft or yielding.   We think the judgment should be affirmed.

Judgment affirmed, with costs.   All concur.

---

(32 App. Div. 606.)

### WOOD v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.   July 26, 1898.)

MASTER AND SERVANT—RAILROADS—NEGLIGENCE—FELLOW-SERVANTS—INCOMPETENCY.

Through negligence of a railroad company's switch tender, a train was switched on another track, where it collided with another, killing plaintiff's intestate, who was the fireman on the train which had the wrong track.   It was the switchman's duty to display a white light at the switch, and at a semaphore near it, if the track was in order, and a red light if otherwise; and defendant's rules required trains not to proceed if red lights or none were displayed.   There were no lights, and the engineer negligently continued onto the other track, and ran on it for four or five miles, where the accident occurred.   *Held*, that the railroad company was liable, if chargeable with notice of the switch tender's incompetency.

Appeal from trial term.

Action by Louisa A. Wood, as administratrix of Charles E. Wood, deceased, against the New York Central & Hudson River Railroad Company.   Verdict and judgment for plaintiff, from which, and from an order denying a motion for a new trial, defendant appeals.   Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Frank Hiscock, for appellant.

Lawrence T. Jones, for respondent.

FOLLETT, J. This action was begun March 17, 1896, to recover damages for the alleged negligent killing of plaintiff's intestate, an employé of the defendant. For five years before February 12, 1896, the plaintiff's intestate had been employed by the defendant as a fireman on freight trains running between East Syracuse and Buffalo. At 8 p. m., February 11, 1896, a stock train left Buffalo for East Syracuse, the crew of which consisted of George W. Pfeiffer, conductor; Thomas Welch, engineer; Charles E. Wood, fireman; ——— Wilson and ——— Cronin, brakemen. From Buffalo to Rochester the train ran on track No. 1, the east-bound passenger track,—also used for fast freight trains; and from Rochester it ran east on track No. 4, which is for east-bound freight trains. About five miles east of Fairport, on February 12, 1896, at 12:30 a. m., a freight train, on which Charles E. Wood, plaintiff's intestate, was the fireman, running east on track No. 3, collided with a freight train running west on the same track, instantly killing the intestate. It was a cold night. Snow was falling, and the wind was blowing from the west. Main street, in the village of Fairport, extends north and south, crossing the tracks of the defendant's road substantially at right angles. Tracks Nos. 3 and 4 are freight tracks; No. 3 being used by west-bound trains, and No. 4 by east-bound trains. A short distance west of Main street, tracks Nos. 3 and 4 diverge, and a few feet east of the point of divergence they are about twenty feet distant from each other, and extend at about this distance from each other for nearly one mile, when they converge, and thence extend east at the usual distance from each other. Between these freight tracks there is a side track about one mile in length, and connected at each end by switches, so that trains can pass onto and from this side track from tracks Nos. 3 and 4. At the point of divergence, west of the village of Fairport, is a switch, by means of which trains running east can be switched from the main tracks onto this side track, and trains running west on the side track onto either main track. At the point of convergence, east of the village of Fairport, there is a like switch, so that trains can pass from either main track onto the side track, or from the side track onto either main track. Near the switch just west of Main street is a semaphore. On the occasion in question, and for some time previous thereto, the semaphore and switch were under the control of Bert B. Stoddard, whose duty it was to set the switches, attend to the signals, and note and report the passage of trains. A white light at this semaphore and switch denoted that the switch was not connected with track No. 4, and that freight trains running east on that track would continue on that track. A red light displayed at the semaphore and switch denoted that the switch was connected with track No. 4, and that trains running east on that track would take the side track, and proceed on the side track to the east end thereof, and then enter upon track No. 4, and continue there-

on eastward. The train on which the intestate was employed is known as the "stock train." Some little time before the stock train reached Fairport, a freight train, known as the "garbage train," running east, stopped on track No. 4 at Fairport to leave some cars. The switch west of the village was immediately changed, so that other trains coming from the west would enter upon the side track, pass by the garbage train, and enter on track No. 4 at the east end of the side track and proceed eastward. When the switch was so set, red lights were displayed at the semaphore and at the switch. About half an hour before the stock train reached Fairport, a freight train known as "B. N. 8," running east on track No. 4, reached the switch at the west of the village of Fairport. Red lights were then burning on the semaphore and on the switch. This train passed from track No. 4 onto the side track, and proceeded to the east end thereof, where it was switched onto track No. 4, and proceeded east on that track. Shortly after this the garbage train, having finished its shifting, proceeded east on track No. 4. It was then the duty of Stoddard to see that the switch at the west end of the village was disconnected from track No. 4, and to show white lights at the semaphore and at the switch. This Stoddard neglected to do, and when the stock train reached the switch it passed onto the side track, ran to the east end thereof, and entered onto track No. 3, instead of track No. 4, and proceeded eastward on that track until the collision occurred. Precisely how the switch at the east end of the side track became connected with track No. 3 does not clearly appear.

The plaintiff seeks to recover on the theory that Stoddard, in charge of the semaphore and switch, neglected to disconnect the switch from track No. 4, and neglected to display red lights at the semaphore and switch, and that Stoddard was an incompetent employé, which was known to the defendant's officers, and that they were negligent in continuing him in charge of the semaphore and switch. The plaintiff insists, and one witness testified, that, when the stock train on which the plaintiff's intestate was fireman reached the switch, no lights were displayed on the semaphore or on the switch. Defendant's rules provide that in case a red light was displayed at the semaphore and switch, or in case no light was shown at either, the trains approaching from the west were to proceed with caution, and wait for a signal before passing onto the side track. These directions the engineer of the stock train neglected to obey. If a red light were burning, he was negligent in not stopping and waiting for a signal. If no light were burning, he was equally negligent in not stopping and waiting for the signal to proceed. The engineer was also negligent in entering upon track No. 3, at the east end of the side track, instead of upon track No. 4, and running on track No. 3 four or five miles without observing that he was upon the wrong track. His negligence was the negligence of a co-employé of the plaintiff's intestate, and for which the defendant is not liable in this action. Bert B. Stoddard, the employé in charge of the semaphore and switch, was also negligent in not disconnecting the switch connecting the side track with track No. 4. The negligent acts of the engineer of the train and of Stoddard were the concurrent, proximate, and efficient causes of the accident. Had Stoddard per-

formed his duty, the accident could not have happened; for, if the switch had not been connected with track No. 4, the stock train could not have passed therefrom onto the side track, and from the side track onto track No. 3. In case the accident would not have occurred but for the negligence of Stoddard, the defendant is liable, in case it was negligent in leaving him in charge of the semaphore and switch. Coppins v. Railroad Co., 122 N. Y. 557, 25 N. E. 915. This presents the question whether Stoddard was an unfit person to be intrusted with the charge of the semaphore and switch. Without reciting the evidence in respect to the competency of Stoddard, it is sufficient to say that it presented a question of fact as to his competency, and also whether the defendant's officers knew, or ought to have known, of his frequent neglect of the duties which he was employed to discharge. These two questions were found in favor of the plaintiff, upon evidence sufficient to take the questions to the jury, and under instructions from the court which were clear and impartial, and I think there is no occasion for interfering with the verdict in this case.

The judgment and order should be affirmed, with costs. All concur.