HOSFORD v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.   March 22, 1899.)

INJURY TO EMPLOYE—NEGLIGENCE—QUESTIONS FOR JURY.

A semaphore operated in connection with a switch was placed at the west end of a siding, so that, when the switch was turned to take east-bound trains on the siding, a lamp on the semaphore showed a red light, and a white light if the siding was not connected.   Under the company's rules, a red light was notice to the crew of an east-bound train that it was to be transferred to the siding, and a white light that it was to continue on the same track.   If no light was displayed, it was to be regarded as a danger signal.   On a stormy night a fast train going east ran on the siding, and at the east end was thrown on a track used for west-bound trains, and a collision occurred, resulting in the death of the plaintiff's intestate.   There was evidence that it was the duty of the switchman to see to the lights on the semaphore, and that no light was displayed, and no notice given to the engineer of the east-bound train that it was to be run from the main track to the siding, except such notice as the absence of a signal gave.   Held, that it was for the jury whether the negligence of the switchman in regard to the lights, together with that of the engineer, was the proximate cause of the accident.

Appeal from trial term, Monroe county.

Action by Cora L. Hosford, administratrix of the estate of Fred Hosford, deceased, against the New York Central & Hudson River Railroad Company, to recover damages sustained by the death of her intestate, alleged to have been caused by defendant's negligence. From a judgment for defendant, and an order denying a motion for a new trial, plaintiff appeals.   Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

Thomas Raines, for appellant.
Albert H. Harris, for respondent.

McLENNAN, J.   At the time in question the defendant was the owner of, and was engaged in operating, a four-track railroad between the city of New York and the city of Buffalo, and which extended east and west through the village of Fairport, in the county of Monroe.   The most southerly track was known as "No. 1," east-bound passenger track; the next as "No. 2," west-bound passenger track; the next as "No. 3," west-bound freight track; and the next, or most northerly, track as "No. 4," east-bound freight track.   Main street, in the village of Fairport, extends north and south, and crosses the tracks of the defendant substantially at right angles. About 1,700 feet east of Main street there was situated a signal or switch shanty, at which a man by the name of Bert B. Stoddard was employed by the defendant.   Commencing at Stoddard's shanty (so called), a siding extended east for a distance of 2,208 feet, and was between freight tracks 3 and 4.   By means of switches at Stoddard's shanty, a train going east on track No. 4 could be run from it onto the siding, and a train going west on the siding could be switched onto either track 3 or 4, at or near the shanty.   At the extreme east end of the siding there were switches by which a train going

east on the siding could be turned onto either track 3 or 4, and a train going west on either track 3 or 4, when it reached the easterly end of the siding, could be run onto it. The purpose of the siding was, among other things, to enable the defendant to pass a fast freight train around a slower or stalled train which might be on tracks 3 or 4, opposite said siding. At a point about 1,156 feet west of Stoddard's shanty, and about 600 feet east of Main street, in said village of Fairport, there was a semaphore, about 25 feet high, and arranged to hold a lamp at the top. It was interlocked with the switch at Stoddard's shanty, and was so constructed that, when the switch at the shanty was turned so as to take a train from main track No. 4 onto the siding, the lamp at the top of the semaphore, if lighted, would show a red light west and east; and if the siding was not connected with track No. 4, and so, that a train would continue on track No. 4, the light would show white west and east. The light at the top of the semaphore could be seen from Stoddard's shanty, so that the person in charge of the switches there could know whether or not the lamp at the semaphore was lighted and properly set. In fact, the arrangement was such that, if the lamp was burning, it must necessarily show the proper light. The rules of the defendant required, in substance, that when the switch at Stoddard's shanty was set so as to cause an east-bound train to leave track No. 4, and go upon the siding, the light at the semaphore must show red to the west and east. Such light at that place was notice to those in charge of such east-bound train that it (the train) was to be transferred from the main track to the siding; and they were then required to stop the train, or to have it under such control that they could stop before reaching the easterly end of the siding, and there themselves turn a switch, and let the train back onto track No. 4. The switchman at Stoddard's shanty had nothing to do with the switches at the east end of the siding; but, under the rules of the defendant, they were to be operated by the crew of any train desiring to use them. Also, by the rules of the defendant, if the light at the semaphore showed white to the west, it was notice to the crew of an east-bound train that they were to continue on main freight track No. 4. Rule 65 also provided:

"A signal imperfectly displayed, or the absence of a signal at a place where a signal is usually shown, must be regarded as a danger signal."

Between 12 and 1 o'clock on the morning of February 12, 1896, a fast freight train, consisting of one of the largest size engines and about 20 loaded cars, was passing through the village of Fairport, going east on track No. 4, that being the regular east-bound freight track. The switch at Stoddard's shanty was so set by him that such freight train left main track No. 4 at that point and went upon the siding, continued eastward on the siding for its entire length, and, without stopping or slacking its speed, passed from the siding at the east end onto main track No. 3 (that being the regular west-bound freight track), and continued on east for a distance of nearly five miles, to a point in Macedon Swamp, where it came in collision with a freight train approaching from the east, upon which the plaintiff's intestate was fireman, and engaged in the performance of his duties

at the time, and was instantly killed, and concededly without any negligence or fault on his part.

There is evidence tending to show that upon the night in question it was the duty of Stoddard, not only to manage and operate the switches at the shanty, but also to know, and see to it, that the lamp at the semaphore was lighted, properly set, and kept burning.    Martin C. Gillan, a witness called on behalf of the plaintiff, testified:

"He [Stoddard] attended to all the switch lights in the vicinity. His duty was to attend to the filling and lighting them according to the season. He operated three switches directly in front of his cabin, one from track 4 to the branch, and returning from the branch to track 3. He also had charge of the semaphore,—the semaphore lights and the lights at the east end of the branch. I saw him perform those duties night after night."

There is evidence tending to show that, when the east-bound train was switched from main track No. 4 onto the siding by Stoddard, there was no red light, or any light, at the semaphore; that no notice was given to the engineer or other members of the crew that their train was to be run from the main track onto the siding, except such notice (in case they observed it) as the "absence of a signal," under the rule above quoted, gave them.   There is evidence tending to show that at the time of the accident the weather was very cold, the night was dark, the wind was blowing with great velocity, the air was filled with snow, and the cab windows of the engine of the east-bound train were covered with ice and frost.

It is urged by the plaintiff that, under those conditions, "no light" at the semaphore was practically no notice to the engineer of the east-bound train that his train had been changed from one track to another, but that, if a red light had been shown, he could and would have seen it, and thus have avoided the accident.  What he did see or could have seen will never be accurately known, as both he and his fireman were killed in the collision.  If the accident which resulted in the death of plaintiff's intestate was caused by the negligence of the engineer, or other members of the crew of the east-bound train, the plaintiff cannot recover, because they were co-employés of the deceased, and the defendant is not liable to this plaintiff for their negligence, no question being made as to their competency.

Bert B. Stoddard, the switch tender, was also a co-employé of the deceased; but as to him it is urged that he was incompetent, and that the defendant knew, or ought to have known, that fact.   The case of Wood v. Railroad Co., 32 App. Div. 606, 53 N. Y. Supp. 163, recently decided by this court, was an action to recover damages for the death of an employé of the defendant resulting from the same accident.   Stoddard's incompetency was urged in that case, and the evidence upon that question was substantially the same as that presented by the record in this case; and the court said:

"It is sufficient to say that it [the evidence] presented a question of fact as to his [Stoddard's] competency, and also whether the defendant's officers knew, or ought to have known, of his frequent neglect of the duties which he was employed to discharge."

It was also for the jury to say, upon all the evidence, whether Stoddard's employment required him to see to it that a red light

which showed to the west was at the semaphore, before he turned the switch to take the east-bound train from track No. 4, and whether he was negligent in the performance of such duty, and whether the accident would have happened except for such negligence on his part. Upon all the evidence, it was for the jury to say whether the negligence of Stoddard, together with the negligence of the engineer of the east-bound train, was not the concurrent, proximate, and efficient cause of the accident. Under the circumstances of this case, considering the state of the weather, that a blinding snow-storm was prevailing at the time, and that it was a dark night, it cannot be said that, if Stoddard had performed his duty, and had seen to it that there was a red light at the semaphore before he turned the switch, the engineer on the east-bound train would not have seen it, notwithstanding he failed to observe that there was no light, and thus have prevented the accident by letting his train back onto track No. 4 at the east end of the siding, instead of proceeding east on track No. 3.

We think that the decision in the Wood Case, supra, is controlling upon all the questions presented by this appeal. The court in that case said:

"The negligent acts of the engineer [of the train going east] and of Stoddard were the concurrent, proximate, and efficient causes of the accident. Had Stoddard performed his duty, the accident could not have happened; for, if the switch had not been connected with track No. 4, the stock train could not have passed therefrom onto the side track, and from the side track on track No. 3. In case the accident would not have occurred but for the negligence of Stoddard, the defendant is liable, in case it was negligent in leaving him in charge of the semaphore or switch."

The fact that the evidence in this case does not show that there was no train on track No. 4 opposite the siding, or some other obstruction which made it necessary to switch the east-bound train onto the siding for the purpose of passing around such obstruction, does not distinguish this case from the Wood Case, supra. It must be conceded that the defendant had a perfect right to use the siding for any purpose in the prosecution of its business, the same as any other portion of its tracks. It had a right to abandon entirely a portion of track No. 4, equal in length to the siding, and use the siding in its place; but, in order to avoid liability in case of accident to an employé, it would then be called upon to show that it had made such reasonable rules for the operation of its road, under such changed conditions, as would protect its employés from injury, and to show that it had not employed incompetent persons to carry out such rules, or retained them after such incompetency was known, or should have been known, to it.

Upon the whole evidence in the case, we think it was a question for the jury to determine whether it was within the scope of Stoddard's employment to see that the light at the semaphore was properly managed upon the night in question, and whether he was negligent in that regard, and whether such negligence, together with the negligence of the engineer of the train going east, was the concurrent, proximate, and efficient cause of the accident. The conclusion is reached that the judgment entered upon the nonsuit should be

reversed, and a new trial granted, with costs to appellant to abide the event.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.