CORA L. HOSFORD, as Administratrix, etc., of FRED HOSFORD, Deceased, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Negligence — collision caused by the failure of a switchman to display a semaphore signal — when this negligence and that of an engineer who fails to notice its absence are concurrent and proximate causes of the accident and present a question for the jury.*

In an action brought to recover damages resulting from the death of an employee of the defendant, a railroad corporation, it appeared that the defendant maintained a siding which was connected with the main tracks by switches; that the rules of the defendant required that when a switch was set so as to cause an east-bound train to run upon the siding, the semaphore signal should display a red light to the east and west, and that the absence of a signal should be regarded as a danger signal; that on a dark night, during a blinding snow storm, an east-bound train ran upon the siding, and, without slackening its speed, passed from the siding upon the west-bound track, where it collided with a train upon which the plaintiff's intestate was a fireman.

There was evidence tending to show that it was the duty of the switchman to attend to the semaphore light; that on the occasion of the accident no light was displayed, and that the engineer of the east-bound train had no notice that the siding was connected with the main tracks, except such as arose from the failure to display any signal whatever.

*Held,* that, under the circumstances, it was a question for the jury whether the negligence of the switchman and of the engineer of the east-bound train were not the concurrent, proximate and efficient causes of the accident, and that it was error to nonsuit the plaintiff.

APPEAL by the plaintiff, Cora L. Hosford, as administratrix, etc., of Fred Hosford, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Monroe on the 17th day of November, 1898, upon the dismissal of the complaint at the close of the plaintiff's evidence by direction of the court after a trial at the Monroe Trial Term, and also from an order entered in said clerk's office on the 9th day of November, 1898, denying the plaintiff's motion for a new trial made upon the minutes.

The action was commenced on the 25th day of February, 1897, to recover the damages which the plaintiff sustained by the death of the intestate, her husband, which occurred on the morning of the 12th day of February, 1896, and was alleged to have been caused by the negligence of the defendant.

*Thomas Raines* and *Charles F. Miller,* for the appellant.

*Albert H. Harris,* for the respondent.

McLENNAN, J.:

At the time in question the defendant was the owner of, and was engaged in operating, a four-track railroad between the city of New York and the city of Buffalo, which extended east and west through the village of Fairport, in the county of Monroe. The most southerly track was known as No. 1, east-bound passenger track; the next as No. 2, west-bound passenger track; the next as No. 3, west-bound freight track, and the next, or most northerly track, as No. 4, east-bound freight track.

Main street, in the village of Fairport, extends north and south, and crosses the tracks of the defendant substantially at right angles. About 1,700 feet east of Main street there was situated a signal or switch shanty, at which a man by the name of Bert B. Stoddard was employed by the defendant. Commencing at Stoddard's shanty (so called) a siding extended east for a distance of 2,208 feet, and was between freight tracks 3 and 4. By means of switches at Stoddard's shanty, a train going east on track 4 could be run from it on

to the siding, and a train going west on the siding could be switched on to either track 3 or 4, at or near the shanty.

At the extreme east end of the siding there were switches by which a train going east on the siding could be turned on to either track 3 or 4, and a train going west on either track 3 or 4, when it reached the easterly end of the siding, could be run on to it. The purpose of the siding was, among other things, to enable the defendant to pass a fast freight train around a slower or stalled train which might be on tracks 3 or 4, opposite said siding.

At a point about 1,156 feet west of Stoddard's shanty, and about 600 feet east of Main street, in said village of Fairport, there was a semaphore about 25 feet high, and arranged to hold a lamp at the top. It was interlocked at the switch at Stoddard's shanty, and was so constructed that when the switch at the shanty was turned, so as take a train from main track No 4 on to the siding, the lamp at the top of the semaphore, if lighted, would show a red light. west and east, and if the siding was not connected with track No. 4, so that a train would continue on track No. 4, the light would show white west and east. The light at the top of the semaphore could be seen from Stoddard's shanty, so that the person in charge of the switches there could know whether or not the lamp at the semaphore was lighted and properly set. In fact the arrangement was such that, if the lamp was burning, it must necessarily show the proper light.

The rules of the defendant required in substance that when the switch at Stoddard's shanty was set so as to cause an east-bound train to leave track No. 4, and go upon the siding, the light at the semaphore must show red to the west and east. Such light at that place was notice to those in charge of such east-bound train that it, the train, was to be transferred from the main track to the siding, and they were then required to stop the train, or to have it under such control that they could stop before reaching the easterly end of the siding, and there themselves turn a switch and let the train back on to track No. 4. The switchman at Stoddard's shanty had nothing to do with the switches at the east end of the siding, but under the rules of the defendant they were to be operated by the crew of any train desiring to use them.

Also, by the rules of the defendant, if the light at the semaphore showed white to the west, it was notice to the crew of an east-bound train that they were to continue on main freight track No. 4.

Rule 65 also provided: "A signal imperfectly displayed, or the absence of a signal at a place where a signal is usually shown, must be regarded as a danger signal."

Between twelve and one o'clock on the morning of February 12, 1896, a fast freight train, consisting of one of the largest size engines and about twenty loaded cars, was passing through the village of Fairport, going east on track No. 4, that being the regular east-bound freight track. The switch at Stoddard's shanty was so set by him that such freight train left main track No. 4 at that point and went upon the siding, continued eastward on the siding for its entire length, and without stopping or slacking its speed, passed from the siding at the east end on to main track No. 3 (that being the regular west-bound freight track) and continued on east for a distance of nearly five miles to a point in Macedon swamp, where it came in collision with a freight train approaching from the east, upon which the plaintiff's intestate was fireman, and engaged in the performance of his duties at the time, and the intestate was instantly killed, and concededly without any negligence or fault on his part.

There is evidence tending to show that, upon the night in question, it was the duty of Stoddard not only to manage and operate the switches at the shanty, but also to know and see to it that the lamp at the semaphore was lighted, properly set and kept burning.

Martin C. Gillen, a witness called on behalf of the plaintiff, testified: "He (Stoddard) attended to all switch lights in the vicinity. His duty was to attend to the filling and lighting them, according to the season. He operated three switches directly in front of his cabin, one from track 4 to the branch, and returning from the branch on to track 3. He also had charge of the semaphore, the semaphore lights and the lights at the east end of the branch. I saw him perform those duties night after night."

There is evidence tending to show that when the east-bound train was switched from main track No. 4 on to the siding by Stoddard, there was no red light, or any light, at the semaphore; that no notice was given to the engineer or other members of the crew that their train was to be run from the main track on to the siding,

except such notice (in case they observed it) as the "absence of a signal," under the rule above quoted, gave them.

There is evidence tending to show that at the time of the accident the weather was very cold, the night was dark, the wind was blowing with great velocity, the air was filled with snow, and the cab windows of the engine of the east-bound train were covered with ice and frost.

It is urged by the plaintiff that, under those conditions, "no light" at the semaphore was practically no notice to the engineer of the east-bound train that his train had been changed from one track to another, but that if a red light had been shown he could and would have seen it, and thus have avoided the accident. What he did see or could have seen will never be accurately known, as both he and his fireman were killed in the collision.

If the accident which resulted in the death of plaintiff's intestate was caused by the negligence of the engineer or other members of the crew of the east-bound train, the plaintiff cannot recover, because they were co-employees of the deceased, and the defendant is not liable to this plaintiff for their negligence, no question being made as to their competency.

Bert B. Stoddard, the switch tender, was also a co-employee of the deceased, but as to him it is urged that he was incompetent and that the defendant knew or ought to have known that fact.

The case of *Wood* v. *N. Y. C. & H. R. R. R. Co.* (32 App. Div. 606), recently decided by this court, was an action to recover damages for the death of an employee of the defendant resulting from the same accident. Stoddard's incompetency was urged in that case, and the evidence upon that question was substantially the same as that presented by the record of this case, and the court said : "It is sufficient to say that it (the evidence) presented a question of fact as to his (Stoddard's) competency, and also whether the defendant's officers knew or ought to have known of his frequent neglect of the duties which he was employed to discharge."

It was also for the jury to say, upon all the evidence, whether Stoddard's employment required him to see to it that a red light, which showed to the west, was at the semaphore before he turned the switch to take the east-bound train from track No. 4, and whether he was negligent in the performance of such duty, and

whether the accident would have happened except for such negligence on his part.

Upon all the evidence it was for the jury to say whether the negligence of Stoddard, together with the negligence of the engineer of the east-bound train, were not the concurrent, proximate and efficient causes of the accident.

Under the circumstances of this case, considering the state of the weather, that a blinding snow storm was prevailing at the time, that it was a dark night, it cannot be said that if Stoddard had performed his duty and had seen to it that there was a red light at the semaphore before he turned the switch, the engineer on the east-bound train would not have seen it, notwithstanding he failed to observe that there was no light, and thus have prevented the accident by letting his train back on to track No. 4 at the east end of the siding instead of proceeding east on track No. 3.

We think that the decision in the *Wood Case* (*supra*) is controlling upon the questions presented by this appeal. The court in that case said :

" The negligent acts of the engineer of the train (going east) and of Stoddard were the concurrent, proximate and efficient causes of the accident. Had Stoddard performed his duty the accident could not have happened, for, if the switch had not been connected with track No. 4, the stock train could not have passed therefrom on to the side track and from the side track on to track No. 3. In case the accident would not have occurred but for the negligence of Stoddard, the defendant is liable in case it was negligent in leaving him in charge of the semaphore and switch."

The fact that the evidence in this case does not show that there was no train on track No. 4, opposite the siding, or some other obstruction which made it necessary to switch the east-bound train on to the siding for the purpose of passing around such obstruction, does not distinguish this case from the *Wood Case* (*supra*). It must be conceded that the defendant had a perfect right to use the siding for any purpose in the prosecution of its business the same as any other portion of its tracks. It had a right to abandon entirely a portion of track No. 4, equal in length to the siding, and use the siding in its place ; but, in order to avoid liability in case of accident to an employee, it would then be called upon to show that it had

made such reasonable rules for the operation of its road under such changed conditions as would protect its employees from injury, and to show that it had not employed incompetent persons to carry out such rules or retained them after such incompetency was known or should have been known to it.

Upon the whole evidence in the case we think it was a question for the jury to determine whether it was within the scope of Stoddard's employment to see that the light at the semaphore was properly managed upon the night in question, and whether he was negligent in that regard, and whether such negligence, together with the negligence of the engineer of the train going east, were the concurrent, proximate and efficient causes of the accident.

The conclusion is reached that the judgment entered upon the nonsuit should be reversed and a new trial granted, with costs to appellant to abide the event.

All concurred.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event.