### SUTTER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. January 20, 1903.)

1. SERVANT—INJURIES—NEGLIGENCE OF FELLOW SERVANTS.
    Negligence of those operating a freight train in failing to properly protect it while switching, in consequence of which a collision with another train results, in which the latter's conductor is killed, is the negligence of fellow servants, for which the company is not responsible.

2. SAME.
    Where a railroad company permits an engine to start out on a trip without any chimney for its headlight, in consequence of which the

¶ 1. See Master and Servant, vol. 34, Cent. Dig. § 506.

headlight cannot be used, and a collision results, in which the conductor of another train is killed, the negligence is that of the company itself, and not that of a fellow servant.

3. SAME.

The fact that the company provides a chimney at a station along the route, which the engineer neglects to obtain, does not relieve the company from liability, the engineer standing in its place, and not in that of a fellow servant, with respect to the duty of obtaining the chimney.

Appeal from trial term, Onondaga county.

Action by Carrie Sutter, as administratrix of George F. Sutter, deceased, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Leroy B. Williams, for appellant.
James E. Newell, for respondent.

SPRING, J.   George F. Sutter, a conductor in the employ of the defendant on a freight train going east from Buffalo, was killed at Depew, N. Y., on the evening of November 24, 1900, in a collision with a west-bound freight train, and his representative brings this action to recover damages, charging that his death was due solely to the negligence of the defendant.   Sutter's train consisted of about 80 cars, and it left the East Buffalo yards of the defendant about 6 o'clock in the afternoon.   The engine was running tender ahead nosed into the caboose with the freight cars drawn along in the rear.   The train was made up temporarily in this way for convenience in shifting it in the yards, and there is some evidence tending to show that this was a common method in which cars were transposed in this yard.   The only light on the tender was a small one, called a "marker," and the train was moving along at from five to eight miles an hour on track No. 4 at the time of the collision.   About 3 o'clock that morning, Burns, an engineer in the employ of the defendant, received an order to make up a freight train in Rochester for Dewitt, a station near Syracuse.   In compliance with the direction he took out an engine, and a lamp explosion caused a fire in the cab, breaking the windows, cutting off the air and steam connections, and doing other injuries. He returned the engine to the engine house for repairs.   In the forenoon he was called up on the telephone from the office of the engine despatcher of the defendant in Rochester inquiring if his engine was fit to take a train to Buffalo, and he replied that it was, and he was thereupon directed to do so.   He got out his engine, and the air and steam connections had been adjusted, but it was without a chimney for the headlight, and the windows in the cab were broken.   Burns applied at the store of the company in Rochester for a chimney, but did not get it, and started with his train of upwards of 60 cars from East Rochester about 12 o'clock noon.   He arrived at Batavia between 3 and 4 o'clock, and stopped his train a few minutes to take water. There was a store of the defendant at Batavia, at which supplies were kept to be used on the trains, including chimneys for headlights; and

Burns was aware of this, but claimed he forgot to obtain one although he had an abundance of time in which to do so. At Looneyville, a station near Depew, the conductor received orders to store his cars, except a few, containing merchandise, in the yards of the defendant at Depew, if there was room to do so. The train arrived at the station at Depew about 8 o'clock in the evening, and it was then dark, and cold, and the wind and sleet were blowing strong. Roach, who tended the switch, and was also a telegraph operator at the junction, had already received orders to have the train pass over the cross-over from track 3, on which it was running, to track 4, to let pass a freight train which was following the Burns train. The switch tender threw the switch for this cross-over to be made when the train arrived. The train crew stopped for about 20 minutes, the conductor in the meantime looking over the switch yard for a place to store the cars. He then gave the signal to cross over, and a brakeman was notified to go ahead and protect the train from the front. It had already started ahead, and the brakeman ran along by the side of the engine, but as he did not get ahead of it he jumped on the cow-catcher, rode a short distance, then stepped off, and managed to get ahead about eight car lengths when for the first time he saw Sutter's train close upon him, and signaled for it to stop, which it was unable to do, and the collision occurred. There were two semaphores at the junction, one about 3,000 feet west of the cross-over, and the other to the east. These were operated from the switch shanty, and by their lights indicated to an engineer whether the track was clear. The semaphore to the west the switch tender was unable to operate that night, and at times before it had become clogged with snow and ice, and the company had been obliged to have it cleaned out upon being notified by the switch tender. There was some proof to the effect that freight trains were wont to do switching upon these two tracks 3 and 4 at this point without further protection than the semaphore signals afforded. The trial court permitted the jury to determine as a question of fact whether Burns, the engineer, and those in charge of the west-bound train, were chargeable with negligence in the manner in which they attempted to make this cross-over. In this, we think, he committed an error requiring the granting of a new trial in this action. Rule 99 of the defendant's rules, which was then in vogue, required those in charge of a freight train to protect it in the front, whenever necessary, by sending ahead a brakeman and placing torpedoes upon the track. Rule 100 reads as follows:

"All operations of switching trains, cars or engines or of crossing from one track to another, must be performed only at such time and in such manner as to prevent the chance of accident, and strictly in accordance with the rules. Great caution must be used and good judgment is required to prevent detention to trains, and rule 99 must be strictly observed."

These rules were not observed, and, independently of any rules, the duty was incumbent upon those in charge of the train on this dark night to use proper precaution to avoid a collision. They knew they were followed by a fast freight train. They had been delayed at the junction nearly one half an hour. They knew that when they crossed over to track 4 they were upon a track used by freight trains going

east, and yet nothing was done to avoid a collision. This was especially incumbent upon the engineer and conductor in view of the fact that the train was running without a headlight, and that it was a stormy, bad night; and their failure to take such precautions as the defendant's rules required, or any precaution whatever, constituted negligence, and, as such omission is the negligence of co-servants, it is something for which the defendant is in no wise responsible. Nor do we think that it is any extenuation of their conduct that the semaphores did not operate properly that night. This was an additional circumstance calling upon them to take extra precautions to guard their train. The rules pointed out expressly the course to be adopted, and did not justify the engineer or conductor in placing reliance upon the semaphores, even though they had been in successful operation. Inasmuch, however, as a new trial is necessary, we deem it proper for the guidance of the trial court to dispose of certain other questions which will necessarily arise upon the retrial of the action. It is urged by the learned counsel for the defendant that Burns was negligent in failing to stop at Batavia and obtain a chimney for his headlight. That, as he was a co-servant with Sutter, and his negligence caused the collision, no recovery may, therefore, be had. We think this rule does not obtain. The engine was left by Burns in the morning in the repair shop of the defendant at Rochester to be repaired. The defendant permitted him to go on his trip with the engine without any chimney for the headlight. The duty of starting the train in the first instance with proper equipment was upon the defendant. This duty it could not delegate, and whoever was engaged in its performance was acting as the alter ego of the defendant. Bushby v. Railroad Co., 107 N. Y. 374, 14 N. E. 407, 1 Am. St. Rep. 844; Goodrich v. Railroad Co., 116 N. Y. 398, 22 N. E. 397, 5 L. R. A. 750, 15 Am. St. Rep. 410; Eaton v. Same, 163 N. Y. 391, 57 N. E. 609, 79 Am. St. Rep. 600; Bailey v. Railroad Co., 139 N. Y. 302, 34 N. E. 918; Coppins v. Railroad Co., 122 N. Y. 557, 25 N. E. 915, 19 Am. St. Rep. 523. The burden was upon the defendant to inspect the engine, and, if it intrusted the work to Burns, its engineer, he was engaged in performing the primary obligation which rested upon it as master, and which work must be performed, before it was in a situation to invoke the rule that Burns and Sutter were co-employés. The fact that Burns was an engineer does not alter this principle. It is the character of the service performed, not the grade of the employé, which determines this question. Hankins v. Railroad Co., 142 N. Y. 416, 37 N. E. 466, 25 L. R. A. 396, 40 Am. St. Rep. 616. It follows logically that, if this duty was incumbent upon the defendant to equip its train, the obligation continued until that equipment was made. It therefore is not relieved from this duty even if it supplied a chimney at Batavia, and which Burns neglected to obtain. The omission of Burns to obtain the needed equipment at Batavia was still the omission of the defendant. We think, therefore, the court was in error in permitting the jury to pass upon the question whether Burns was negligent in omitting, while at Batavia, to procure the chimney for his engine. If this was a question solely between Burns and the defendant, it might be said the furnishing of the chimney was a mere detail of the

work, and the defendant was relieved by the failure of Burns to procure it at Batavia. We must, however, bear in mind that thousands of men in the defendant's service were co-employés of Burns. If any one of these received injuries by reason of the negligence of this engineer, no recovery may be had because it was the negligence of the co-employé, although the person injured was blameless. It is, therefore, in view of the far-reaching effects of this principle, important to hold the defendant to a fairly strict accountability in equipping its train properly and safely before sending it out on its round. As was said in Bushby v. Railroad Co., 107 N. Y. 374, 14 N. E. 407, 1 Am. St. Rep. 844, at page 381, 107 N. Y., at page 409, 14 N. E., and 1 Am. St. Rep. 844:

"The duty, therefore, was upon the master to fit or prepare the car for the use to which it was consigned, and no encouragement should be given to an omission to perform that duty, or to negligence or failure in any degree in respect to it. On the contrary, a just public policy, as well as that of the statute, requires a court to hold a railroad company to a strict observance of its obligations."

The rule that, where an employé is injured through the fault of a fellow workman, the common employer is not liable to respond in damages, is therefore for the benefit of the latter, and depends upon the performance of the full measure of duty by such employer. If the negligence consist in doing or failing to do some duty with which the master is chargeable and has intrusted to the employé, the rule adverted to does not exist, for the servant is in the stead of the master. This case illustrates these familiar principles. The omission to supply the proper headlight at Rochester was imputable to the defendant. Its obligation to Sutter was not met until the defect was repaired. Consequently the failure of Burns to procure the chimney at Batavia was still the failure of the defendant, for the engineer, with reference to that appliance, was the representative of the defendant, not its servant. Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449; Eastland v. Clarke, 165 N. Y. 420, 428, 59 N. E. 202; Knisley v. Pratt, 148 N. Y. 372, 378, 42 N. E. 986, 32 L. R. A. 367. In the Benzing Case, in discussing this proposition, the court say at page 552, 101 N. Y., page 451, 5 N. E.:

"The master is chargeable, ordinarily, with knowledge of the means necessary to be employed in performing his work, and, when their procurement and selection is delegated to a servant, he stands in the place of the master in discharging those duties, and the servant's neglect in that office is chargeable to the employer as an omission of duty enjoined upon him. * * * Ignorance by the master of defects in the instrumentalities used by his servants, in performing his work, is no defense to an action by the employé who has been injured by them, when by the exercise of proper care and inspection the master could have discovered and remedied the defects, or avoided the danger incident therefrom."

We reach the conclusion, therefore, that the absence of the chimney, and the consequent absence of the headlight, were the fault of the defendant, and the jury may possibly find that the absence of the headlight was a co-operating and influential cause of the collision, without which it would not have occurred, and the defendant would then be liable, notwithstanding the negligence of Burns and his crew in the

management of the train at the crossing. Stringham v. Stewart, 100 N. Y. 516, 3 N. E. 575; Wood v. Railroad Co., 32 App. Div. 606, 53 N. Y. Supp. 163; Crispin v. Babbitt, 81 N. Y. 516, 37 Am. Rep. 521; Eaton v. Railroad Co., 163 N. Y. 391, 57 N. E. 609, 79 Am. St. Rep. 600. The learned counsel for the appellant cites McDonald v. Railroad Co., 63 Hun, 587, 18 N. Y. Supp. 609. That case is not pertinent, because there, when the engine left the yards of the defendant, it had been duly inspected, and the defect occurred en route, and therein lies the distinction. Had the engine been properly equipped with the chimney at Rochester and that appliance broken between that place and Batavia or Depew, the rule contended for by the defendant would be applicable. Without entering into a discussion of the subject, we are satisfied that the question of Sutter's management of his train was properly submitted to the jury as one of fact. The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment reversed, and new trial granted, with costs to the appellant to abide the event.

ADAMS, P. J., and McLENNAN, J., concur in opinion. WILLIAMS and HISCOCK, JJ., concur in result.