## O'KEEFE v. GREAT NORTHERN ELEVATOR CO.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1905.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—PERSONS LIABLE.
    Plaintiff was employed as a grain scooper by an association, but by an arrangement between the association and defendant the latter furnished the equipment for discharging grain at its elevator, and kept a man present at the unloading of the boats, to supply appliances when needed. and to supervise the work. *Held*, that such arrangement rendered defendant liable for injuries to plaintiff caused by defendant's negligence in furnishing inadequate or unsafe appliances.

2. SAME—EVIDENCE—QUESTION FOR JURY.
    In an action for injuries to a servant by the fall of a hook chain and block, whether the defectiveness of the hook, in that its mouth was spread to an abnormal width, was the cause of the accident, *held* a question for the jury.

3. SAME—CONCURRING CAUSES.
    If, but for a defect in a hook attached to a chain and block, which fell and injured plaintiff, the same would not have left the flange to which it was attached, notwithstanding a sudden jerk on a rope attached to it, defendant was not relieved from liability, though such sudden jerk of the rope was caused by the negligence of some employé.
    McLennan, P. J., and Stover, J., dissenting.

Appeal from Trial Term, Erie County.

Action by Michael O'Keefe against the Great Northern Elevator Company. From a judgment in favor of defendant, and from an order dismissing the complaint at the close of plaintiff's case, he appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

John L. Ahern, for appellant.
Frank Gibbons, for respondent.

SPRING, J. The plaintiff, a scooper employed in elevating wheat from the steamboat Neptune at the elevator of the defendant in the city of Buffalo, was injured on the 6th of October, 1902, by the falling of a hook chain and block weighing 40 or 50 pounds, and charges the defendant with negligence in producing the injuries. The plaintiff was employed by the Lake Carriers' Association, but by virtue of an arrangement with the defendant the latter furnished the equipment for discharging the grain at its elevator, and kept a man called the "monthly man" present at the unloading of the boats to supply appliances when needed, and to supervise the work so far as the same was under the direction and authority of the defendant. The relation created by this arrangement rendered the defendant liable for injuries to the scoopers caused by the negligent omission of the defendant to furnish adequate or reasonably safe appliances to enable the men to carry on their work. Connors v. Great Northern Elevator Co., 90 App. Div. 311, 85 N. Y. Supp. 644, affirmed 180 N. Y. ——, 72 N. E. 1140. The grain was shoveled within reach of the elevator legs by large steel shovels, there being two at each leg. There were two ropes attached to each shovel, and one end of each of these lines was fastened to a drum in the tower of the elevator carrying the leg. These lines passed through a snatch block and pulley and other appliances to the shovel, one being fastened to the front and the other to the rear of the shovel. One of these lines was used to draw the shovel towards the leg of the elevator, and the other to pull it back for reloading. These ropes were under the control of the shovel tender, who regulated the operation of the shovel. The boat was of steel construction, containing steel beams each a foot wide and about three-fourths of an inch in thickness. Extending out about three inches from the upper, and also a like one from the lower, edge of the beam was a flange held by an iron hook attached to a short chain of three to five links passing over and down the opposite side of the steel beam, the line through the block pulling it straight out and down. On the day of the accident to the plaintiff he was directed by the foreman or shovel follower to shift the block. To obey this order required him to take the block hook and tackling from the flange, which was about as high as his head. He started to do this, when the rope which had uncoiled from the drums as the appliances stopped to enable the shift to be made, and which was lying on the grain, was suddenly jerked taut, pulling the hook from the flange, and the whole apparatus was thrown against the plaintiff, injuring him. It appears that the mouth of the hook extending from the flange had been spread apart. Normally the width of the opening from the tongue or end of the crook to the inner side of the straight back was from 1¾ to 2 inches, while this one had been distended to 3¾ or 4 inches. The claim of the plaintiff is that this spreading apart of the hook rendered it less liable to retain its clutch over the flange, and, except for this defective condition, the accident would not have happened. The proof shows that the monthly man, who was the one intrusted by the defendant with the business of furnishing

suitable appliances for the operation of these shovels, knew of this defect in the hook. The accident occurred on Monday. On the Saturday forenoon preceding, Kane, who was in charge of the operation of the shovels, showed the hook to the monthly man, who said he would have it fixed. Monday morning Kane asked the monthly man if it had been repaired, and was informed that he had forgotten it, but to use it until another could be obtained. Three or four days before the accident O'Neill, also a shovel follower, apprised this monthly man of the defective condition of the hook. O'Neill told him that "it was too straight. * * * It would come off the flange, and might hurt somebody." The danger apprehended was not that the tensile strength of the hook had been lessened by the flaring of the opening, but that it was liable to be pulled off, causing the block and chain to be thrown against some of the scoopers. The defendant therefore knew that the hook was defective, and apparently realized in what the peril consisted. It is a reasonable deduction that a hook with an extended opening caught over an iron band three inches in width is more apt to be pulled off by a side or upward twitch than if the tongue of the hook reached well under the flange. At least it cannot be said as matter of law that the extension of the opening was not responsible for the accident. The effect of the defective condition was for the jury to determine. Nor does the determination of this question depend upon speculation. Practical men, with this tackling explained to them, might consistently reach a definite conclusion as to whether the spreading of the hook caused it to fly from the flange. It rarely can be said with absolute certainty that the injury sustained resulted from a known defective appliance. Generally it is for the jury, taking into consideration the manner in which the accident occurred, and the extent and nature of the imperfect equipment, to decide whether the injuries complained of are imputable to the flaw in the appliance. This rule does not imply that the jury are to be permitted to conjecture that the injuries are to be ascribed to the defect alleged. Witnesses cannot testify directly that the defect caused the accident. They describe the conditions and surrounding circumstances and the jury make the deduction. If the accident may reasonably be found to have resulted from the imperfect appliance, the jury may be allowed to draw that conclusion without entering the realm of speculation or conjecture. Again, Kane, who was in his third year of service in following shovels, testified that he never "saw the usual ordinary hook used for * * * fastening these blocks to the beams fly off when the block was being shifted." Just what caused the slack of the line to be jerked tense at this particular juncture does not appear, although apparently the occurrence was not unusual. We do not regard it as very important what caused the rope to tighten. If, but for the defect in the hook, it would not have left the flange, the defendant is not relieved from liability, even though some employé negligently may have caused the slack in the line to be suddenly taken up. Stringham v. Stewart, 100 N. Y. 516, 3 N. E. 575; Sutter v. N. Y. C. & H. R. R. Co., 79 App. Div.

362, 79 N. Y. Supp. 1106; Strauss v. N. Y., N. H. & H. R. R. Co., 91 App. Div. 583, 87 N. Y. Supp. 67.

The judgment and order should be reversed, and a new trial ordered, with costs to appellant to abide the event. So ordered. All concur, except McLENNAN, P. J., and STOVER, J., who dissent.