## CONNORS v. GREAT NORTHERN ELEVATOR CO.

(Supreme Court, Appellate Division, Fourth Department. January 5, 1904.)

1. NEGLIGENCE—LIABILITY FOR DAMAGE.

An elevator company, which, for compensation, furnishes a steam shovel and appliances to one desiring to unload a boat load of grain into its elevator, and a man to see that they are put up right, having negligently furnished a defective rope in the tackle, which breaks, letting a block fall on one employed in the unloading, is liable therefor.

McLennan, P. J., and Stover, J., dissenting.

Appeal from Trial term, Erie County.

Action by Patrick Connors, administrator of William Connors, deceased, against the Great Northern Elevator Company. From a judgment for defendant for costs entered on a nonsuit at the close of plaintiff's evidence, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Daniel J. Hanley, for appellant.
Frank Gibbons, for respondent.

SPRING, J. The plaintiff's intestate was a scooper employed by the Lake Carriers' Association in unloading grain from the boat Thomas Maytham into the elevator owned by the defendant, a domestic corporation, in the city of Buffalo. The steam shovel and appliances used in elevating the grain were owned by the defendant. They were kept in a place accessible to the scoopers, and whenever a boat load of grain came to an elevator belonging to the defendant in the city of Buffalo the scoopers obtained the shovel and tackle and disembarked its load of freight. The defendant received for the use of its shovel and appliances $1.20 for each 1,000 bushels unloaded. It kept a man, called the "monthly man," named Cavanaugh in this instance, in its employ, who was present at the unloading as its representative to furnish any supplies needed in the operation of the steam shovel and with general superintendence over the same. If any part of this gearing was inadequate or needed remedying, this employé supplied it. As one witness put it:

"I know what the duties of the shovel tender are. Cavanaugh is a monthly man, and is also called a shovel tender. He was employed by the elevator company. I have seen him about work there. He would look after the leg —put the leg in and take it out again of the hold of the boat, and look after the leg as it was put in and taken out, and see that it was placed right. He

had to see that the rigging and machinery was put up right before the scoopers started to work. They had to put it up to his satisfaction."

A heavy block of wood, called the "snatch block," was attached to an upright or stanchion by a line used to draw the grain into the leg extending from the hold of the boat to the elevator and up which the grain was drawn. Connors, the intestate, was working in the hold of the boat in November, 1901, with about a hundred other workmen, unloading the grain, when the rope (which was defective and insufficient) holding up this block parted, and the block fell, striking Connors, and causing his death. Two or three days before the accident, Cavanaugh, the defendant's representative, put in this rope, when the following occurred, as testified to by the assistant boss scooper:

"Just before the accident there was a snatch block on the deck, and no line on it, and I told Cavanaugh to put a line on it. This was a few days before the accident, or a few jobs, I don't know. I told him a few jobs before this one—prior to this one—to put a line on the block, so he says, 'All right, I will put one on,' and he went into the tower. A line something like this was lying in the tower, and he started to put this on. I said, 'What are you going to do with that?' He says, 'Put it on the snatch block.' I spoke, 'Not a line like that?' and he said, 'Yes.' I said, 'It will kill somebody if you do.' He said, 'What do you want me to do—go and buy a line?' I says, 'All right, go ahead,' and he put it on."

The intestate was not in the employ of the defendant. The appliances, however, were furnished by it to use for the purpose of unloading the grain. Its man had charge of this business. The appliances were furnished at a specific compensation, and were used as designed and intended. Is the defendant liable? When the defendant turned over the steam shovel and its appliances to the Lake Carriers' Association to be used in unloading grain, it knew that the grain was to be taken out by a large number of scoopers. It impliedly invited these men to go into the hold of the freighter with the assurance that it had furnished appliances which rendered the performance of the work reasonably safe, so far as such tackling was concerned. Its obligation to the men who did the work was to furnish fitting appliances. They had a right to assume that this had been done. The defendant, to be sure, made its agreement with the Lake Carriers' Association, and there was no privity of contract between the elevator association and the plaintiff's intestate, in that he was not in its employ. The liability of the defendant is not contractual in its character. Barrett v. Lake Ontario Beach Imp. Co., 174 N. Y. 310–314, 66 N. E. 968, 61 L. R. A. 829. It undertook to furnish appliances for a particular work, the negligent performance of which duty it knew imperiled the lives of many men. Having for an adequate compensation undertaken to furnish this tackling with full knowledge of its use, it assumed a responsibility to those who were injured while it was being operated precisely as intended. In Coughtry v. Globe Woolen Company, 56 N. Y. 124, 15 Am. Rep. 387, a firm of contractors was putting a cornice on defendant's mill. The defendant's men erected a scaffold for this purpose. The plaintiff's intestate was employed by the contractors in putting up the cornice. The scaffold, by reason of its improper construction, fell while

the plaintiff's intestate was at work upon it, causing his death, and the Court of Appeals reversed the judgment of the General Term which affirmed a nonsuit. The court say at page 128, 56 N. Y., 15 Am. Rep. 387:

"It is evident from the nature and position of the structure that death or great bodily harm to those persons would be the natural and almost inevitable consequence of negligently constructing it of defective material or insufficient strength. It was clearly the duty of the defendant and its agents to avoid that danger by the exercise of proper care. This duty was independent of the obligation created by the contract. If neglected, it would be no answer to the action to say that the defendant was also guilty of a breach of its contract; nor would it be any better answer to say that by the terms of the contract it was permitted so to construct the scaffold as to imperil the lives of the workmen."

See, also, Devlin v. Smith, 89 N. Y. 470-477, et seq., 42 Am. Rep. 311; Hannigan v. Union Warehouse Company, 3 App. Div. 618, 38 N. Y. Supp. 272, affirmed 157 N. Y. 711, 53 N. E. 1125.

It is also to be noted that the death of the plaintiff's intestate was the natural and probable result following the parting of the rope and the consequent falling of the block. The injuries were not unexpected, but were to be anticipated readily, and it was incumbent upon the defendant to protect the men against an accident which it could easily prevent. The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment reversed, and new trial granted, with costs to appellant to abide the event. All concur, except McLENNAN, P. J., and STOVER, J., who dissent.