ELLSWORTH M. STATLER, Respondent, *v.* GEORGE A. RAY
MANUFACTURING COMPANY, Appellant.

Negligence — liability of manufacturer for negligent construction
of appliance inherently dangerous in character — incompetent
evidence as to effect of injuries.

In the case of an article of an inherently dangerous nature, a manufacturer
may become liable to third parties having no contractual relation for a
negligent construction which, when added to the inherent character of
the appliance, makes it imminently dangerous and causes or contributes
to a resulting injury not necessarily incident to the use of such an
article if properly constructed, but naturally following from a defective
construction.

In an action brought to recover for injuries received through an alleged
negligent act of defendant, the plaintiff was asked, "Just state the effect
that this accident had on your mind and on your nervous system ?"
The witness answered, under objection, "Having every dollar I had on
earth invested in the proposition I naturally was very anxious as to
what the condition of things were and what was going on." Motion was
made to strike out the answer as irresponsive and incompetent, which
was denied. *Held,* error. Plaintiff was president of a hotel company
which had purchased from defendant the appliance which caused the
injury. He was asked, "How much financial interest did you have at
stake in the concern ?" and was allowed to state the amount of his invest-
ment in the business. *Held,* incompetent. Plaintiff was allowed to state,
as an item of damages, the amount of money expended on a trip to the
south after the accident for the benefit of his health. *Held,* incompetent.

A letter, making statements damaging to defendant, which was written to
the president of defendant by one of its officers, who, at the time of the
writing, was connected in business with plaintiff, was received under
defendant's objection. It purported to be a personal communication
by the writer, and its character was simply advisory. It was not writ-
ten in connection with any duty or by virtue of any authority which
rested in or had been conferred on the writer. *Held,* error.

*Statler* v. *Ray Mfg. Co.,* 125 App. Div. 69, reversed.

(Argued May 19, 1909; decided June 18, 1909.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
March 9, 1908, affirming a judgment in favor of plaintiff
entered upon a verdict and an order denying a motion for a
new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles F. Tabor* for appellant. A machine, by which a person engaged in operating it is injured, will not render the manufacturer liable in the absence of any privity of contract between them unless the manufacturer knew the machine was defective, although he was guilty of negligence in manufacturing and testing the machine. (*Torgesen* v. *Schultz*, 192 N. Y. 160; *Heizer* v. *K. D. Mfg. Co.*, 110 Mo. 605; *Winterbottom* v. *Wright*, 10 M. & W. 109; *Field* v. *French*, 80 Ill. App. 78; *Zieman* v. *K. E. Mfy. Co.*, 90 Wis. 497; *Necker* v. *Harvey*, 49 Mich. 517; *Curtin* v. *Somerset*, 140 Penn. St. 70; *Roddy* v. *M. P. R. Co.*, 104 Mo. 234; *M. K. T. R. R.* v. *Merritt*, 70 Pac. Rep. 358; *McCaffery* v. *M. Mfg. Co.*, 23 R. I. 381.) The trial court erred in admitting plaintiff's testimony in answer to questions as to the effect of the accident on his nervous system and as to the expenses incurred in connection therewith. (*Barney* v. *Keene*, 132 N. Y. 16; *Gumb* v. *T. T. S. R. R. Co.*, 114 N. Y. 414.) The trial court erred in admitting in evidence a personal letter from Hayes to Ray. (*Orensdorf* v. *N. Y. C. & H. R. R. R. Co.*, 119 App. Div. 644; *Bank of Le Roy* v. *Purdy*, 100 App. Div. 67; *M. L. M. Co.* v. *F. S. S. R. R. Co.*, 139 N. Y. 146; *Cobb* v. *U. E. Co.*, 191 N. Y. 480; *Taylor* v. *Bank*, 174 N. Y. 185; *Hoffman* v. *M. E. Co.*, 111 App. Div. 410; *Havens* v. *Gilmore*, 83 App. Div. 84; *Fox* v. *Village of Manchester*, 183 N. Y. 146.)

*George P. Keating* for respondent. The court properly submitted to the jury the question of whether the boiler urn in question was an instrument or appliance imminently dangerous to human life by reason of improper construction, and that if they so found, that the defendant was liable, if the defect arose because of defendant's negligence. (*Kahner* v. *E. Co.*, 96 App. Div. 174; *Devlin* v. *Smith*, 89 N. Y. 470; *Coughtry* v. *G. W. Co.*, 56 N. Y. 124; *Davies* v. *P. H. Co.*, 65 Hun, 573; *Torgesen* v. *Schultz*, 192 N. Y. 156; *Sweeney* v. *Rovell*, 31 Misc. Rep. 640; *Connors* v. *G. N. E. Co.*, 90

App. Div. 311; 180 N. Y. 511; *Connors* v. *King Line,* 98 App. Div. 261; *Cochrane* v. *Sess,* 168 N. Y. 372; *Husted* v. *J. T. C. Co.,* 120 Fed. Rep. 865.) The letter from Hayes to Ray was properly admitted for the purpose permitted by the court. (*Collins* v. *Butler,* 179 N. Y. 156.)

HISCOCK, J. This action was brought to recover damages for personal injuries sustained through the explosion of a large coffee urn whereby the plaintiff and another were severely scalded and a third person killed. The defendant was engaged in manufacturing and vending such urns for use in hotels. They were constructed in what was called a battery of three. The central urn or boiler was equipped with a coil of pipe through which steam was driven whereby water was heated which was siphoned into the urn on either side where the coffee was made. In the case of the appliance in question the central urn was of considerable diameter and perhaps three or four feet in height, and on the occasion of practically its first use its bottom was partially driven out by force of steam and water and the accident to plaintiff caused. The defendant did not sell this urn to the plaintiff but to a jobber, who in turn sold the same to a company of which plaintiff was an officer. Thus there were no contractual relations between the parties to this action, but plaintiff instituted and thus far has succeded in his action on the theory that defendant well knew the purposes for which its urn was to be used; that the latter was of such a character inherently that, when applied to the purposes for which it was designed, it was liable to become a source of great danger to many people if not carefully and properly constructed; that the defendant negligently and carelessly constructed it so that it was imminently dangerous when employed as intended to be, and that as the natural and direct result of this negligent and heedless conduct the urn exploded and the plaintiff was injured.

No exceptions were taken which challenge the correctness of the instructions given by the trial judge in his charge upon this substantial question of the case, but without attempting

to review with exactness everything which he said upon this subject, we think it may be said that he submitted the case with substantial accuracy on this theory defining the limits within which defendant might be held liable and excluding as a ground of liability any accident resulting from unskillful installation or improper use of the urn.   We think further that there was evidence which permitted a jury to say that the defendant, knowing the uses for which the urn was intended when it marketed the same, was guilty of, and of course chargeable with knowledge of, defective and unsafe construction. This leaves on this branch of the case simply the question whether a manufacturer and vendor of such an inherently dangerous appliance as this was may be made liable to a third party on the theory invoked by plaintiff, and we think that this question must be regarded as settled in the latter's favor by the following authorities: *Thomas* v. *Winchester* (6 N. Y. 397); *Coughtry* v. *Globe Woolen Co.* (56 N. Y. 124); *Devlin* v. *Smith* (89 N. Y. 470, 474–477); *Davies* v. *Pelham Hod Elevating Co.* (146 N. Y. 363); *Torgesen* v. *Schultz* (192 N. Y. 156); *Connors* v. *Great Northern Elevator Co.* (90 App. Div. 311; affirmed., 180 N. Y. 509); *Kahner* v. *Otis Elevator Co.* (96 App. Div. 169); *Huset* v. *Case Threshing Machine Co.* (120 Fed. Rep. 865, 872); *Keep* v. *Nat. Tube Co.* (154 Fed. Rep. 121, 127); *Marquardt* v. *Ball Engine Co.* (122 Fed. Rep. 374); Thompson on Negligence (§ 825 *et seq.*).

The *Torgesen* case is the last decision by this court on this general subject.   That action was one by the plaintiff to recover against the defendant for personal injuries caused by the bursting of a siphon bottle of aerated water filled and put on the market by the latter.   The plaintiff enjoyed no contractual relation whatever with the defendant, and the action was maintained on the same principles urged in this action.   It was in that case in substance held that if a vendor had knowledge that the bottles used for aerated water when charged at a certain pressure were liable to explode unless first subjected to an adequate test, and there was evidence that the test used by such vendor was insufficient to render it rea-

31

sonably certain that bottles charged at such pressure would
not explode when used as customers might be expected to use
them, the question of the defendant's negligence should be
submitted to the jury. The action thus was based upon no
contractual relation, but upon the ground of negligence.
As the basis in part at least of the decision, Judge WILLARD
BARTLETT, writing in behalf of the court, quoted with approval
the rule laid down by Lord Justice COTTON in *Heaven* v.
*Pender* (L. R. [11 Q. B. D.] 503) as follows: "Any one who
leaves a dangerous instrument, as a gun, in such a way as to
cause danger, or who without due warning supplies to others
for use an instrument or thing which to his knowledge, from
its construction or otherwise is in such a condition as to cause
danger, not necessarily incident to the use of such an instru-
ment or thing, is liable for injury caused to others by reason
of his negligent act." This rule distinctly recognizes the
principle that in the case of an article of an inherently dan-
gerous nature, a manufacturer may become liable for a negli-
gent construction which, when added to the inherent charac-
ter of the appliance, makes it imminently dangerous, and
causes or contributes to a resulting injury not necessarily
incident to the use of such an article if properly constructed,
but naturally following from a defective construction.

While thus we should not hesitate to affirm the judgment
on its general merits we find that errors were committed in
rulings on evidence which are so pronounced and in the aggre-
gate at least so important and prejudicial to the rights of the
defendant that they cannot be overlooked.

As has been stated, the plaintiff was the president of a
company engaged in running a hotel. He claimed the right
to recover under his complaint for injuries to his mind and
nervous system as well as to his body and his counsel asked
him the question, "Just state the effect that this accident had
on your mind and on your nervous system." This was duly
objected to and the ruling of the court overruling the objec-
tion duly excepted to. Thereupon the witness answered,
"Having every dollar I had on earth invested in the proposi-

tion, I naturally was very anxious as to what the condition of things were and what was going on." A motion was made to strike this out as irresponsive and incompetent, but the court ruled it responsive, to which exception was had. The witness then further was asked, " So how much financial interest did you have at stake in the concern?" This question was duly objected to and exception taken to its allowance, whereupon the witness answered: "I owned all the second mortgage bonds which was $100,000, and had borrowed $50,000 from a St. Louis bank for which I had become personally responsible," etc. This evidence seems to have been allowed on the ground that it tended to show " the mental suffering of the witness," but we are unable to grasp the theory on which it properly tended to establish this as a result of the accident. It either served to show the amount of interest which the plaintiff had in the business and which was liable to suffer as the result of his sickness, an element of damages not pleaded, or else it tended to show that business anxiety rather than the accident affected the plaintiff's nerves and mind. In either case it was clearly incompetent and by no means harmless.

Plaintiff was allowed to show that he expended $1,500 on a trip to the south as claimed for the benefit of his health after the accident, although we do not find any evidence from the physician which it was promised would be introduced for the purpose of justifying this testimony. But independent of this latter feature we are not aware of any case and our attention is called to none which has gone so far as to allow a plaintiff to recover such an item of damages as this on the facts here appearing. Of course, if plaintiff could recover the amount mentioned as the expense of a trip to the south for a few weeks or months, there is no reason why a jury might not award him many thousand dollars for a year's trip to Europe, and if when he reached his point of destination instead of taking rooms in a sanitarium it was deemed advisable to hire an entire house, logically one item would be as chargeable as the other. While in a general way doubtless a

trip to the south or to Europe might sometimes be beneficial to the health of a person who had been scalded as plaintiff was, we think that under any ordinary circumstances this means of procuring relief is too remote and indefinite to be regarded as an item of damages proximately resulting from the accident. Other similar items of moneys claimed to have been expended by plaintiff for care, attendance, etc., are criticized, but these criticisms in some cases at least are not supported by well-taken exceptions and we shall not stop to consider them all.

Some time prior to the accident one Hayes had been treasurer and secretary of the defendant corporation, but he had gone from Buffalo to St. Louis and become connected with the hotel company which bought the urns. Subsequent to the accident he wrote a letter to the person who was president of the defendant which, in spite of the strenuous objections and exceptions of the latter, was allowed in evidence. This letter was of a very damaging character indicating in substance that the urn which had exploded was of a defective character; that an attempt was being made to avoid publicity and suppress information concerning the accident and that it was desirable that the defendant should in some way fix the matter up. It was written on the paper of the hotel company and on its face purported to be a personal communication by the writer to the person who was president of the defendant as an individual and in its character was simply advisory. There was no evidence which in our judgment permitted a jury to find that Hayes even thought that he was writing it as an officer of the defendant or that it was written in connection with any duty or by virtue of any authority which either rested or had been conferred on him. In addition the defendant sought to show affirmatively by evidence, some of which we think was competent, that Hayes was not acting as an officer of the defendant at the time. Originally the court stated that he would receive this letter in evidence as tending to show what the defendant undertook relative to the repairing of the defects in the urn after the accident, and later as his last instructions to the jury he told the latter that

if they found Hayes "represented the Inside Inn people (the hotel company which bought the urn) in writing the letter to the defendant the letter would not have the weight as an item of evidence for the jury as though it were written by Mr. Hayes as a representative of the defendant. In other words, that a man cannot serve two masters," thus permitting the jury to give the letter weight, even though it should find that Hayes in writing it acted as a representative of another company than the defendant.

Statements recitative of past events such as are found in this letter, either made by a person representing an independent third party or by a person who, if an officer of the defendant, still at the time was acting in a personal capacity and not in the transaction of any official corporate duty, were so fundamentally and utterly incompetent as proof by which to charge the defendant that it does not seem necessary to specify the various rules which were violated by their admission as evidence.

Testimony of a somewhat similar character consisting of oral declarations made by the same man to one of plaintiff's witnesses after the accident concerning the character of the urn is criticized on this appeal. It is doubtful, however, whether the defendant succeeded in taking any objection and exception to this latter evidence sufficient to present the question which he argues.

There are many other criticisms of rulings which we shall not discuss. It is sufficient to say that some of these criticisms are clearly unfounded and that others are not sustained by timely objections and exceptions. If there still remain others which present debatable questions, we may perhaps assume that on another trial dangerous ground will be avoided by a safe margin.

The judgment appealed from should be reversed and a new trial granted, with costs to abide event.

GRAY, WERNER, WILLARD BARTLETT and CHASE, JJ., concur; VANN, J., concurs in result; CULLEN, Ch. J., absent.

Judgment reversed, etc.