## COOK v PEOPLE'S MILK CO.

(Supreme Court, Special Term, Erie County.   April 6, 1915.)

1. DISCOVERY ☞41—EXAMINATION OF ADVERSE·PARTY—APPLICATION FOR OR-
DER.

That plaintiff may have an order for examination before trial of de-
fendant's managing agent, it must appear that the testimony is neces-
sary and material to the cause of action.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. § 54;  Dec. Dig.
☞41.]

2. DISCOVERY ☞41 — EXAMINING ADVERSE PARTY — MATERIAL MATTERS —
PLEADING.

Plaintiff, by alleging in his complaint matters immaterial to his cause
of action, may not have an examination before trial of defendant's man-
aging agent as to such matters, for the purpose of being prepared to meet
any possible defense.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. § 54;  Dec. Dig.
☞41.]

3. DISCOVERY ☞41—EXAMINING ADVERSE PARTY—MATTERS MATERIAL.

The actionable negligence of defendant milk company, by whose milk,
purchased from a retailer, plaintiff was poisoned, was in placing on the
market poisonous milk;  and how it was poisoned by it is not part of his
case, as regards his right to examination before trial of its agent.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. § 54;  Dec.
Dig. ☞41.]

Action by Julia E. Cook against the People's Milk Company.  Heard
on motion by plaintiff to compel examination of a witness before trial
and to produce books and papers.  Motion denied.

Ralph S. Kent, of Buffalo, for the motion.
Harry D. Williams, of Buffalo, opposed.

WOODWARD, J.   The plaintiff, by an order to show cause, moves
this court for an order to compel one Fred P. Husted, alleged to be
the managing agent of the defendant, to submit to an examination
before trial, and to produce certain books, papers, records, cards, etc.,
at such examination.

[1]  There has been a modern disposition to enlarge the powers of the
court in the direction of giving adverse parties an opportunity to ex-
amine before trial, and the old-time technical rules have been large-
ly swept aside.  Cherbuliez v. Parsons, 123 App. Div. 814, 108 N. Y.
Supp. 321.  It is, however, still necessary that the party moving the
court should present the necessary facts to justify the order, and· pri-
marily it must be made to appear that the "testimony is necessary and
material" to the cause of action.  The petition before this court, which
sets out practically the same facts alleged in the complaint, in attempt-
ing to comply with this requirement of the statute, says:

"That among other allegations in said complaint it was alleged that the in-
juries sustained by your petitioner were caused solely by the negligence and
carelessness of the defendant in purchasing bottles therefor, washing and
cleaning same, guarding and protecting its milk and containers from poison-
ous substances, and in failing to have pure milk bottled in pure, clean bottles,
and so handled and protected that no poisonous substance could get therein,"
and that the defendant has "duly interposed an answer, putting in issue,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
152 N.Y.S.—30

among other things, the above allegations of said complaint," and that the petitioner "has no personal knowledge of the matters above set forth," and that she is advised by her attorney "that it will be absolutely necessary that the testimony of officers and employés of the defendant company, having personal knowledge of the facts relating to the issues above set forth, be taken before trial, before a referee, in accordance with the statute in such case made and provided, in order that said issue may be properly prepared and tried, and that the ends of justice be met."

[2] We may assume that, if it was made to appear that these alleged issues were necessarily involved in the plaintiff's cause of action, it could be spelled out of the above allegations that the plaintiff intended to use the testimony thus elicited on the trial of the action, although it is certainly not clearly set forth. The suggestion is that the plaintiff desires the examination to prepare for the trial, rather than that the testimony is necessary and material to the establishing of the cause of action. There is no direct allegation that the testimony of Fred P. Husted, the secretary and treasurer of the defendant is "necessary and material" to the establishing of the alleged cause of action. We are told that the complaint alleged certain matters, and that the defendants have interposed an answer "putting in issue, among other things, the above allegations of the complaint"; but, if these allegations are immaterial to the cause of action asserted, it cannot be that the Legislature has intended that by merely overpleading a cause of action the plaintiff can be permitted to go into the details of the defendant's business for the purpose of being prepared to meet any possible defense which the defendant may be able to assert. It becomes necessary, therefore, to look into the real issues presented by the pleadings, for upon these must depend the determination of whether these allegations are material, and if they are found not to be material, then the mere allegation that "it will be absolutely necessary that the testimony of officers and employés of the defendant company * * * be taken before trial" does not comply with the statutory requirement.

[3] The complaint alleges:

That the defendant is a domestic corporation, "engaged in the preparing, bottling, selling, and distributing of milk and milk products for immediate consumption in the city of Buffalo, and did, and does now, hold itself out to be specially equipped, prepared, and qualified for that purpose and for the purpose of preparing, bottling, selling, and distributing for sale only pure, clarified, and perfectly pasteurized sweet milk and cream for immediate consumption; that the defendant leaves with divers and local grocers and merchants in said city quart bottles of such milk, so prepared, for sale and distribution among, and immediate consumption by, the persons in their respective localities"; that "on or about the 26th day of January, 1914, the defendant left such milk, so prepared, at the store of Darwin F. Emens, 217 De Witt street, in said city; such milk was sealed with defendant's seal and bottled in defendant's bottles at defendant's plant, and delivered to said Emens by defendant for delivery by him to customers and others for immediate consumption, by human beings."

. The defendant admits all of the material allegations so far, except in so far as the complaint alleges that this milk was for immediate consumption. Indeed, its admissions are rather broader than the allegations of the complaint, for it admits that it "sold and delivered to one Darwin F. Emens * * * such milk, purified, clarified, and perfectly pasteurized, sealed with defendant's seal and bottled in defend-

ant's bottles at defendant's plant," and in effect merely denies that it provided the milk for immediate consumption. The complaint then alleges:

That on the said 26th day of January "plaintiff caused to be purchased a quart bottle of such milk, so left at said Emens store, for immediate consumption by herself and family, and upon information and belief that said bottle and milk were in the same condition when purchased for plaintiff as when delivered to said Emens by defendant; that plaintiff opened said bottle, and consumed some of the cream and milk therein, practically immediately after its purchase."

This allegation is denied on information and belief, and is clearly the material issue so far presented in the case. Then follows the allegation on information and belief that said milk was not pure, wholesome, or clarified, but, on the contrary, contained poisonous and deleterious substances solely through the negligence and carelessness of the defendant in purchasing bottles therefor, washing and cleansing the same, guarding and protecting its milk and containers from poisonous substances, and in failing to have pure milk bottled in pure, clean bottles, and so handled and protected that no poisonous substances could get therein.

Obviously the actionable negligence is not in the purchasing of bottles. The defendant owed the plaintiff and the public no duty in this regard. The actionable negligence, which is denied by the defendant consists, if at all, in placing upon the market poisonous milk, and the question as to how the milk became poisoned is no part of the plaintiff's case. The defendant, in selling its milk, bottled under its seal, and delivered to merchants for distribution and sale, assumed the obligation to the public of providing wholesome milk; and if the plaintiff can establish the fact that it purchased a quart of milk, such as the defendant admits having delivered to Mr. Emens, and that such milk contained an active and dangerous poison, and that in using such milk she was made sick, sore, etc., she has established a prima facie case against the defendant, and the particular place in which the defendant purchased its bottles, or the manner of washing or cleansing the same, is not at all material to the plaintiff's case, however important these facts may be by way of defense.

The principle involved was early decided in the case of Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455, where a manufacturing druggist placed belladonna in a jar labeled as dandelion, and this belladonna, after several intermediate sales to jobbers, was finally sold to the plaintiff, for whom a physician had prescribed extract of dandelion, resulting in a severe poisoning. In that case the court said:

"In the present case the sale of the poisonous article was made to a dealer in drugs, and not to a consumer. The injury, therefore, was not likely to fall on him, or on his vendee, who was also a dealer, but much more likely to be visited on a remote purchaser, as actually happened. The defendant's negligence put human life in imminent danger. Can it be said that there was no duty on the part of the defendant to avoid the creation of that danger by the exercise of greater caution, or that the exercise of that caution was a duty only to his immediate vendee, whose life was not endangered? The defendant's duty arose out of the nature of his business and the danger to others incident to its mismanagement. Nothing but mischief like that which actually happened could have been expected from sending the poison falsely labeled into the market; and the defendant is justly responsible for the

probable consequences of the act. The duty of exercising caution in this respect did not arise out of the defendant's contract of sale to Aspinwall. The wrong done by the defendant was in putting the poison, mislabeled, into the hands of Aspinwall as an article of merchandise, to be sold and afterward used as the extract of dandelion, by some person then unknown. * * * The defendant's contract of sale to Aspinwall does not excuse the wrong done to the plaintiffs. It was a part of the means by which the wrong was effected. The plaintiffs' injury and their remedy would have stood on the same principle, if the defendant had given the belladonna to Dr. Foord without price, or if he had put it in his shop without his knowledge, under circumstances which would probably have led to its sale on the faith of the label. * * * The defendant, by affixing the label to the jar, represented its contents to be dandelion, and to have been 'prepared' by his agent, Gilbert. The word 'prepared,' on the label, must be understood to mean that the article was manufactured by him, or that it had passed through some process under his hands, which would give him personal knowledge of its true name and quality. * * * The label conveyed the idea distinctly to Foord that the contents of the jar was the extract of dandelion, and that the defendant knew it to be such."

The principle of the above case has been consistently followed, both in this state and by the Supreme Court of the United States. Kuelling v. Roderick Lean Mfg. Co., 88 App. Div. 309, 84 N. Y. Supp. 622; Statler v. Hay Mfg. Co., 125 App. Div. 69, 109 N. Y. Supp. 172; Id., 195 N. Y. 478, 481, 88 N. E. 1063, and authorities there cited; MacPherson v. Buick Motor Co., 153 App. Div. 474, 138 N. Y. Supp. 224; Willey v. Mynderse, 165 App. Div. 620, 151 N. Y. Supp. 280; Waters-Pierce Oil Co. v. Deselma, 212 U. S. 159, 29 Sup. Ct. 270, 53 L. Ed. 453. And it thus clearly appears that the gravamen of the action set out in the complaint is the representation of the defendant that the milk contained in the bottles was merchantable, pasteurized milk, while in fact it contained a deadly poison. The duty rested upon the defendant to see to it that the milk was of the quality represented— at least, that it did not contain substances which made it inimical to human life—and in failing to perform this duty it became liable to the plaintiff, as the ultimate purchaser of this milk, for any damage she might sustain from its use, provided, of course, that the defendant was unable to establish its own freedom from negligence in the premises.

No amount of examination of the defendant's secretary and treasurer about the source from whence the bottles came, or the manner of performing the work of pasteurizing the milk, or of the cleaning of the bottles, can add anything to the plaintiff's cause of action; no revelations from the books or papers called for can add anything to the plaintiff's cause of action, if she is able to prove the unadmitted facts alleged in her complaint. The defendant, under her pleadings, has placed a deadly poison on the market under its own special seal in the guise of pasteurized milk, and it is for the defendant, if these facts are established, to explain how this poison came to be there, and its own lack of responsibility therefor. Why, then, does the plaintiff seek this order? Why should she be permitted to harass and annoy the defendant over a matter which is not material or necessary to her cause of action? It seems to me that there is no ground for permitting the plaintiff the privilege asked, and that the motion should be denied.

An order denying the motion may be entered, with $10 costs.