ADELINE SMITH, Respondent, *v.* PEERLESS GLASS CO., INC., and Another Appellants.
WILLIAM H. SMITH, Respondent, *v.* PEERLESS GLASS CO., INC., and Another, Appellants.

Second Department, July 22, 1931.

*Arnold J. Brock*, for the appellant Peerless Glass Co., Inc.

*Gerald Donovan* [*Daniel A. Boyle* with him on the brief], for the appellant Minck Bros. & Co., Inc.

*Alfred W. Meldon* [*Maurice Brandt* with him on the brief], for the respondents.

DAVIS, J.  The plaintiff Adeline Smith, then twenty years of age, was employed at a roadside stand on September 13, 1928. As she was engaged in her duties and standing by the receptacle in which beverages were kept on ice for sale, a bottle filled with carbonated cream soda exploded, throwing particles of glass into her right eye, eventually causing loss of sight.  This action to recover damages followed.  In the other action, tried at the same time, the father sued for her services.  It is unnecessary to consider his action separately, and in our discussion we will speak only of the appeal in the daughter's action.

Questions of pleading were settled by acquiescence of counsel in the manner of offering proof on the trial.  Other questions raised on the appeal have not been overlooked, but in our opinion do not merit discussion.  The primary questions to which we will give attention are those of fundamental liability.

The verdict of the jury has disposed of the questions of fact. The beverage was manufactured, bottled and sold by defendant Minck Bros. & Co., Inc.  The bottles were manufactured by defendant Peerless Glass Co., Inc.  The plaintiff has a verdict against both for negligence.

We entertain little doubt concerning liability in the action against the bottler.  There is proof that there was a defect in this particular bottle, discernible upon proper inspection, and that continued use increased the danger.  It is admitted that the beverage was charged

with gas exerting a pressure of at least thirty-five pounds to the square inch of surface. There is proof that other bottles exploded under similar circumstances, with notice to defendant, and that it was known that these bottles would be subjected in the ordinary use and process of sale to sudden changes of temperature. As a matter of fact this one bottle exploded when it, with several others, was taken from the ordinary temperature of the stand and placed on ice in an open receptacle and had there remained for a short time.

Since the time of the decision in *Thomas* v. *Winchester* (6 N. Y. 397) there has been a development of the doctrine that a manufacturer is held to the duty of proper inspection and a high degree of care in placing on the market an article having potential elements of danger to those using it or coming in contact with it, without full opportunity of discovering its hazards. Cases involving bottles which exploded without warning, where liability was imposed on the manufacturer, are *Torgesen* v. *Schultz* (192 N. Y. 156); *Willey* v. *Mynderse* (165 App. Div. 620); *Nolan* v. *Fach* (178 id. 115). There are authorities in other jurisdictions to the same effect. (*Dail* v. *Taylor*, 151 N. C. 284; *Cashwell* v. *Bottling Works*, 174 id. 324; *Grant* v. *Bottling Co.*, 176 id. 256; *Weiser* v. *Holzman*, 33 Wash. 87.) Other cases *contra* in this State either antedated the *Torgesen Case* (*supra*) or present a different state of facts. These need not be discussed; nor need there be mention of cases in some other jurisdictions stating a different rule. We deem the question of liability settled in this State. Familiar cases similar in principle involving other dangerous agencies are *Statler* .v. *Ray Mfg. Co.* (195 N. Y. 478) and *MacPherson* v. *Buick Motor Co.* (217 id. 382). As will presently be more fully stated, this bottle was defective. The methods of test and inspection have, on disputed testimony, been determined by the jury to be inadequate. With proof of the inherent danger attending the use of this defective bottle, we are of opinion that liability of the defendant Minck Bros. & Co. is established as a question of fact.

Appellant Peerless Glass Co. stands in a different position. It sold these bottles for the purpose of use in the manufacture and sale of carbonated beverages. If through use and deterioration caused by handling, washing or otherwise, the bottles became dangerous, then some new element intervenes, the fault of this party becomes too remote and it is not liable. If liable at all, its liability was in defective manufacture and inadequate inspection, having in mind the uses to which the bottles would be put.

In *MacPherson* v. *Buick Motor Co.* (*supra*) the defendant manufactured automobiles and was held liable to one injured by the

collapse of a wheel. It purchased some parts of others. " The wheel was not made by the defendant; it was bought from another manufacturer." At page 390 it is said: " The proximity or remoteness of the relation is a factor to be considered. We are dealing now with the liability of the manufacturer of the finished product, who puts it on the market to be used without inspection by his customers. If he is negligent, where danger is to be foreseen, a liability will follow. We are not required at this time to say that it is legitimate to go back of the manufacturer of the finished product and hold the manufacturers of the component parts. To make their negligence a cause of imminent danger, an independent cause must often intervene; the manufacturer of the finished product must also fail in *his* duty of inspection. It may be that in those circumstances the negligence of the earlier members of the series is too remote to constitute, as to the ultimate user, an actionable wrong * * *. We leave that question open. We shall have to deal with it when it arises."

In a measure that question of liability is now presented. Did some burden of duty and care rest upon this defendant toward those using its product in reliance on proper manufacture and inspection? Has this responsibility been lost through remoteness or intervening cause?

The real manufacturer in this case was the bottler. It prepared and offered the finished product for sale to the trade. It procured the bottles from another manufacturer, but each bottle was more of a constituent part of the product than in the case of an automobile wheel. It did not change its character or become a subsidiary part of the article sold. If the chain of causation goes directly back to the manufacturer without an intervening cause, there can be no valid reason for exonerating the latter from liability. It undertook the primary duty of manufacturing bottles for a designed use so that there would be a proper and safe product; and the duty of making adequate inspection rested upon it so that the ordinary use of the bottle would not be attended with latent danger.

The testimony of an expert (Dr. Allen Rogers), whose qualifications were conceded, was that the fragments of this particular bottle when examined by him disclosed striations, a " sort of twist with a line you might call it, sort of a crease along the bottle; " and he called attention to the edge of the cut. It is " fairly round and not like a broken cut, not like a sharp piece of glass, showing that there was sort of a groove in there, being a groove in that part of the bottle the glass was thinner in the bottom of the groove than it was at the top * * *, so it made two thicknesses of

glass at that point. This bottle, of course, was then subjected to the annealing process in the lehr and the amount of heat distributed over the bottle during that cooling process was greater in the thin part than it was in the thick part, so that it received an uneven cooling down of the glass, consequently there was a strain set up there in the glass which, when it came in contact with the cold or shock, especially cold, of course it made a difference in expansion of one part of the glass bottle than in the other and sort of a gas, a ripping apart effect, starting a slight crack in the glass. As soon as the glass began to crack then of course pressure underneath blew the glass off and then it shattered, and this is shown by this smooth edge on here almost like a bevel edge, which is due to that striation. * * * It would show there was a strain in the glass at that point."

The witness further testified that this striation could be discovered with a polariscope. It was customary in the bottle trade to subject bottles to such examination. He said that this imperfect bottle should never have been subjected to a pressure of thirty-five pounds to the square inch on account of the striation. There was another practical or customary test, " to put the glass vessel in water at a temperature which you can just about handle, say 135, maybe up to 140 degrees Fahrenheit, then take it out of that hot water and dip it in ice water. If there is any striations in there it will immediately crack and the bottle would not stand that test, of course, would be apt to crack on account of the striations or tension in the glass."

These striations would undoubtedly indicate an improper annealing of the bottle. If dipped into warm water and then into cold water a small crack would start. If properly annealed there would be no crack. It would take about five seconds to examine a bottle under a polariscope for striations.

There was, of course, dispute of these facts and conclusions by the defendant's experts, but with these, in view of the verdict, we are not concerned. Proof was made by it concerning the methods of manufacture, and the tests and inspection made which included only 6 bottles out of 2,880, besides the effort to remove imperfect bottles during the course of manufacturing and packing. These, we may say, did not approximate the standards fixed as necessary and customary by Dr. Rogers. It was admitted that this defendant knew that the bottles were purchased for filling and vending charged beverages; that they were to be taken from a warm temperature and placed on ice, and that they were to be carried in delivery trucks in summer temperature.

According to some concepts, negligence, like risk, is a term of

relation, and does not become a tort until a determinable wrong result. We think those fundamental elements are here present. A manufacturer makes and sells a defective bottle, knowing its intended use. It knew or might readily have foreseen how others, without new tests, may come in contact with it in the course of trade. On extensive use and sale depend its profits. It is known that the bottle will be filled with a highly charged beverage; and for ready sale this must be placed on ice to make it cool and palatable. Bottles properly manufactured will withstand the sudden changes of temperature. Only those of defective quality contain potentialities of danger. Science and custom have provided methods of inspection to discover those unfit to go into the channels of trade with risks inherent in their structure. So the manufacturer stands in a relation of duty to those who may become subject to the danger arising from improper manufacture and inadequate inspection. The duty is left unperformed; a wrong and injury result. The original negligence carried the potency of peril, without warning, to the feet of this plaintiff.

The proof that this was an old bottle, weakened by use, was inconclusive. It does not appear that this defendant relied on tests to be made by the bottler; even if it did, inadequate tests by the latter would not absolve it from the consequences of its own breach of duty. We think that the direct chain of causation remained unbroken by any new and direct intervention; that the danger was not necessarily incident to the use of the bottle, but, in view of its known use, was one inherent in its nature, which might reasonably have been foreseen; and that there is not such an element of remoteness that this defendant may be exonerated from liability.

On the principles stated in authorities heretofore cited, we reach the conclusion that the judgments and orders should be affirmed, with costs.

Present — LAZANSKY, P. J., YOUNG, CARSWELL, SCUDDER and DAVIS, JJ.

In each case: Judgment and order unanimously affirmed, with costs.